**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL   rkaplan@kaplanhecker.com

December 28, 2020

**VIA ECF**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Brittain v. Trustees of Columbia University in the City of New York*, No. 20-cv-09194 (S.D.N.Y.)

Dear Judge Castel:

We represent Defendant The Trustees of Columbia University in the City of New York ("Columbia" or the "University") in the above-captioned action. In accordance with Rule 3.A of Your Honor's Individual Practices, we submit this pre-motion letter to (i) set forth the legal and factual basis for Columbia's anticipated motion to dismiss the Complaint (ECF 2) pursuant to Federal Rule of Civil Procedure 12(b)(6) and (ii) propose a briefing schedule (to which Plaintiffs have consented). We are available, of course, to answer any questions Your Honor may have, including at the next conference scheduled before the Court on January 7, 2021.

**I.    Plaintiffs' Allegations**[1]

Plaintiffs were students at Columbia's Graduate School of the Arts (the "SoA") pursuing courses of study in either visual and sound art or in film during the spring semester of 2020. ¶¶ 18, 23-24.[2] Plaintiffs have filed this lawsuit on behalf of themselves and a proposed class of students "pursuing the same courses of study during that same period." ¶ 18; *see also* ¶¶ 19-21. Plaintiffs' primary contention is that Columbia breached purported promises "concerning and in connection with [Plaintiffs'] course of study" when, in March 2020, the University suspended "in-person learning" and access to specific campus facilities in response to the "coronavirus pandemic that began spreading in the United States in early 2020," with its "well-documented effects on higher education." ¶¶ 1, 49-51.

---

[1]   For the purposes of this letter anticipating a motion to dismiss pursuant to Rule 12(b)(6), we rely on the Complaint's factual allegations which, with certain exceptions, must be accepted as true in the context of such a motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[2]   Citations to "¶ __" refer to paragraphs of the Complaint (ECF 2).

Plaintiffs concede that "[v]irtually all (if not all) universities and colleges in the United States went into lockdown" at this time. ¶ 49. Nowhere in the Complaint do Plaintiffs take issue with Columbia's judgment that "increased measures were necessary to respond to the rising health risks posed by the Coronavirus pandemic." ¶ 50. Nor do Plaintiffs dispute that such measures were reasonable and taken by the University in good faith and with the best interests of its students in mind. Nevertheless, Plaintiffs assert that by suspending in-person learning and "mov[ing] all classes on-line," Columbia allegedly "breach[ed] . . . its explicit promises . . . of studio-based, hands-on education in visual art and sound art, and skills-based learning predicated on the actual production of film in the course of film study." ¶¶ 1, 51; *see also* ¶¶ 34, 41, 66. Plaintiffs bring claims for breach of implied contract, ¶¶ 67-77, and unjust enrichment, ¶¶ 78-82. Plaintiffs seek damages and restitution for tuition and fees paid to the University for the "spring semester of 2020 and any other period during which plaintiffs and the [proposed] class pay tuition and fees and [Columbia] fails to provide them with the education it promised." ¶ 1; *see also* ¶¶ 18-21.

## II. Basis for Dismissal Pursuant to Rule 12(b)(6)

As the New York Court of Appeals has long recognized, New York courts have a "restricted role" in reviewing the decisions of colleges and universities, *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (internal quotation marks omitted), and they are to "exercise[] the utmost restraint in applying traditional legal rules to disputes within the academic community," *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 413 (1980); *see also Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011). Specifically, by limiting liability to clear and specific promises by universities for particular services, *see, e.g., Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998), and by requiring plaintiffs to plead that a university acted arbitrarily or in bad faith to establish breach of such a promise, *Pell v. Trs. of Columbia Univ. in the City of N.Y.*, No. 97 Civ. 0193, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.), New York courts have long guarded the ability of universities to exercise discretion in managing their academic and administrative affairs through the rigorous examination of pleadings at the motion to dismiss stage.

For reasons set forth in more detail below, Plaintiffs do not (and cannot) satisfy New York's well-established common law standards here, and their Complaint should be dismissed pursuant to Rule 12(b)(6).

### A. Breach of Contract Claims

Under New York law, "[w]hen a student is admitted to a university, an implied contract arises between the parties." *Baldridge v. State*, 293 A.D.2d 941, 942 (3d Dep't 2002) (alteration in original) (internal quotation marks omitted); *accord Papelino*, 633 F.3d at 93. Plaintiffs fail to state a claim for breach of that implied student-university contract for at least four reasons.

*First*, Plaintiffs fail to identify a specific, enforceable promise. As New York courts have recognized, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally*, 22 F. Supp. 2d at 207. Rather, to bring a claim for breach of the implied student-university contract, a student must "identif[y] . . . a specific breached promise," *id.*, to provide "certain specified services," *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 92 (2d Dep't 1982); *see also Chira v. Columbia Univ. in N.Y.C.*, 289 F. Supp.

2d 477, 485 (S.D.N.Y. 2003) (dismissing complaint where plaintiff "point[ed] to no document . . . that g[ave] rise to a promise which Columbia breached"). This pleading requirement safeguards courts from becoming "involve[d] . . . in the subjective professional judgments of trained educators." *Gally*, 22 F. Supp. 2d at 207. As courts in this district have consistently recognized, failure to meet this threshold pleading requirement requires dismissal under Rule 12(b)(6). *See, e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Okoh v. Sullivan*, No. 10 Civ. 2547, 2011 WL 672420, at *7 (S.D.N.Y. Feb. 24, 2011), *aff'd*, 441 F. App'x 813 (2d Cir. 2011); *Chira*, 289 F. Supp. 2d at 485-86; *Gally*, 22 F. Supp. 2d at 209.[3]

Here, Plaintiffs fail to identify any specific, enforceable promise to provide an in-person education. The Complaint alleges that the University's obligations arise from "specific oral and written promises . . . contained in a series of documents authored, promulgated, and disseminated by Columbia." ¶¶ 30-31.[4] However, Plaintiffs point to only two specific statements in the documents they reference and attach to the Complaint: (1) language in a studio lease that claims "[s]tudio practice is vital" to the visual arts program, ¶ 40 (alteration in original); and (2) that a particular on-campus facility is described as the film students' "home-away-from-home" for completing post-production work, ¶ 46. In addition, Plaintiffs generally refer to "[d]escriptions of courses and coursework, requirements for completion of various stages of education, expected milestones, references to the work to be completed, and other aspects of these materials," ¶ 33, and claim that the SoA programs included "studio-based research" and "hands-on learning," ¶¶ 37, 41.

None of these allegations amount to a "specific breached promise" within the meaning of New York law. *Gally*, 22 F. Supp. 2d at 207. For starters, the allegation that Columbia has described or characterized SoA coursework in a particular way in University publications is not the same thing as Columbia having made a concrete, judicially enforceable promise to provide Plaintiffs with a specified manner of education. *See, e.g.*, *Cheves v. Trs. of Columbia Univ.*, 89 A.D.3d 463, 464 (1st Dep't 2011) (declining to read "list[ing] [of] certain benefits and services generally available" as "specific promise material to plaintiff's relationship with Columbia that has been breached"). And under New York law, the fact that coursework may customarily be offered in a certain format does not give rise to a contractual obligation to adhere to that format going forward where, as here, there is no showing that the university had "expressly, by contract or otherwise, obligated itself" to do so. *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985) (recognizing that making such a contractual promise would require the university to "relinquish

---

[3] Recent decisions from the Western and Northern Districts of New York do not sufficiently grapple with New York's requirement that plaintiffs plead a specific promise. *See Bergeron v. Rochester Inst. of Tech.*, No. 20 Civ. 6283, 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020); *Ford v. Rensselaer Polytechnic Inst.*, No. 20 Civ. 470, 2020 WL 7389155, at *4-5 (N.D.N.Y. Dec. 16, 2020). And because the defendants in both cases did not lay out the complete standard for pleading breach in the education context, both decisions permitted contract claims to proceed without considering whether bad faith had been plausibly pleaded, as required under New York law. *See infra* pp. 4-5. Both courts also appear to have overlooked well-settled principles of New York law in declining to dismiss unjust enrichment claims. *See infra* pp. 5-6.

[4] Even if Plaintiffs had pleaded a specific oral promise (which they have not), such an oral promise would not be sufficient to support a breach of contract claim in the student-university context. Under New York law, "only specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Keefe v. N.Y. Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010).

its authority to make its own academic judgments and to administer and allocate its resources"), *aff'd*, 66 N.Y.2d 946 (1985). Moreover, even assuming that some sort of specific, enforceable promise had been made by Columbia, Plaintiffs have made no showing that any such promise was made unconditionally, to be carried out even in the event of an unprecedented global pandemic and without regard to the health and safety of the University community. *See, e.g.*, *Cheves*, 89 A.D.3d at 464 (rejecting breach of contract claims where "nothing in th[e] document [identified by plaintiff] guarantee[d] unfettered, irrevocable access for alumni to the campus or its facilities").

Nor does the Complaint's assertion that Plaintiffs were deprived of the "core value" of their educations solve these pleading deficiencies. ¶ 29. Plaintiffs contend that while "on-line learning can be an effective substitute for in-person learning" in other disciplines, "[t]his is not the case with visual art, sound art, or film," which "[b]y their nature . . . require[] physical presence in studios and production facilities." ¶ 53. But Plaintiffs' opinions as to the pedagogical methods that Columbia should have used during the Spring 2020 semester or their subjective assessment of the value of a remote arts education have no bearing on the claims they bring here. New York law is clear that Plaintiffs must identify a specific, enforceable promise in order to plead a breach of contract claim, precisely so that courts can avoid the types of pedagogical debates that Plaintiffs invite here. *See Gally*, 22 F. Supp. 2d at 207. And that threshold pleading requirement is not satisfied by the assertion that Plaintiffs "expected" something different from what they received where no "agreement, express or implied" existed. *See, e.g.*, *Anthes v. N.Y. Univ.*, No. 17 Civ. 2511, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57 (2d Cir. 2019).

*Second,* Plaintiffs fail to plausibly plead breach of any purported promise. When evaluating contractual compliance in the university context, courts do not require literal or even material compliance but instead look to whether the university "acted in 'bad faith or in an arbitrary or irrational manner,' thus giving rise to a viable breach of contract claim." *Pell*, 1998 WL 19989, at *20. This good faith standard for assessing breach of a student-university contract is another outgrowth of New York's public policy determinations in the student-university context—it protects the subjective judgment of professional educators against second-guessing by the courts by limiting judicial intervention to those situations in which "an institution exercises its discretion in an arbitrary or irrational fashion." *Olsson*, 49 N.Y.2d at 414. Accordingly, to survive a motion to dismiss, a complaint must adequately plead that the university acted arbitrarily or in bad faith in purportedly breaching the implied student-university contract. *See, e.g.*, *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 511 (S.D.N.Y. 2015).

Plaintiffs do not (and cannot) do so here. By closing facilities and switching to online learning, Columbia acted responsibly and well within its discretion when responding to unprecedented health and safety risks posed by COVID-19. And, as New York law has long recognized, even when a university has arguably made promises to students that may be sufficiently specific and concrete to suggest a contractual obligation (which again, is not the case here), the university nonetheless retains the freedom to exercise its discretion in fulfilling those obligations in light of the circumstances before it. *See, e.g.*, *Paynter v. N.Y. Univ.*, 319 N.Y.S.2d 893 (N.Y. App. Term 1971) (rejecting tuition refund claims where university cancelled 19 days of classes due to student anti-war protests following the killings at Kent State University). Moreover, in the switch to online learning, SoA undertook extensive and judicially-noticeable efforts to accommodate its visual and sound art and film students, including by providing multiple options

KAPLAN HECKER & FINK LLP

for students to complete their degrees and by granting remote access to key resources. *See, e.g.*, *Cunningham v. Cornell Univ.*, No. 16 Civ. 6525, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (Castel, J.) (taking judicial notice of Cornell's "Investment Policy Statement" because it was "publicly available online"). These actions do not reflect the bad faith that New York courts require in this context.

*Third,* even if Plaintiffs could identify a specific, enforceable promise that the University allegedly breached in bad faith, Columbia was excused from performance from at least March 22, 2020 onwards, when Governor Cuomo's executive order and its implementing guidance prohibited universities from holding in-person instruction.[5] Under New York law, the defense of impossibility excuses a party from performing its obligations under a contract where (i) "the means of performance makes performance objectively impossible," and (ii) "the impossibility [was] produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v. Cent. Mkts. Inc.*, 70 N.Y.2d 900, 902 (1987). While the defense of impossibility is typically resolved "only after the parties have had adequate opportunity to investigate and present their evidence," *Lowenschuss v. Kane*, 520 F.2d 255, 266 (2d Cir. 1975), it is clear here that it was legally impossible for Columbia to provide in-person learning and access to specific facilities and equipment once Governor Cuomo's (judicially-noticeable) executive orders and implementing guidance were in effect. Any performance of any obligation to provide in-person instruction or access to certain facilities and equipment would have been "forbidden or rendered illegal by an[] act of 'the law.'" *Town of North Hempstead v. Pub. Serv. Corp. of Long Island*, 107 Misc. 19, 25 (N.Y. Sup. Ct. 1919), *aff'd*, 192 A.D. 924 (2d Dep't 1920).

*Finally,* to the extent that Plaintiffs seek damages or restitution for tuition and fees paid for any semester after Spring 2020, such claims fail not only for the same reasons as claims for tuition paid for Spring 2020, but also because Plaintiffs were aware of the limitations on in-person instruction caused by the pandemic when they entered into any contract with the University for those semesters. *See, e.g.*, ¶ 56 ("Columbia also announced that it would not be possible to hold Open Studios in the Fall of 2020 for 2019-2020 first year students.").

### B. Unjust Enrichment Claim

Under "well-settled principles of New York law," the existence of a contract "governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017) (internal quotation marks omitted). A plaintiff may plead unjust enrichment in the alternative "only where there is 'a bona fide dispute as to whether a relevant contract exists or covers the disputed issue.'" *Id.* Here, where Plaintiffs do not question that an implied contract exists, *see* ¶ 30, and yet assert quasi-contract claims that are "indistinguishable" from what they seek in contract, the quasi-

---

[5] Eight days after Columbia announced that all classes for the rest of the spring semester would be conducted remotely, Governor Cuomo issued an executive order requiring non-essential businesses to reduce their in-person workforce by 100 percent, effective March 22, 2020. N.Y. Exec. Order No. 202.8 (Mar. 20, 2020). Guidance issued pursuant to Governor's Cuomo's executive orders allowed for "remote instruction or streaming of classes from public or private schools . . . provided, however, that no in-person congregate classes are permitted." N.Y. State Dep't of Econ. Dev., *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders*, https://esd.ny.gov/guidance-executive-order-2026 (last updated Oct. 23, 2020).

KAPLAN HECKER & FINK LLP

6

contract claims should be dismissed, *Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015).

Moreover, even if Plaintiffs could bring an unjust enrichment claim, it would fail for the same reasons as their contract claims. Unjust enrichment requires a plaintiff to "establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *see also Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972) (noting that courts ask whether "defendant's conduct was tortious or fraudulent"). As explained in the context of Plaintiffs' contract claims, *see supra* pp. 4-5, Plaintiffs have failed to plausibly allege that the University acted in bad faith in exercising its discretion to suspend in-person learning amidst an unprecedented global pandemic, and thus cannot show that "equity and good conscience" require restitution.

### III.  Proposed Briefing Schedule

Columbia proposes the following briefing schedule, to which Plaintiffs have consented:

- Columbia to file its motion to dismiss by **February 1, 2021**;

- Plaintiffs to file any opposition by **February 22, 2021**; and

- Columbia to file any reply by **March 5, 2021**.

\* \* \*

This letter is intended to provide the Court with an overview of the grounds for Columbia's anticipated motion to dismiss, but is not intended as an exhaustive recitation of all arguments that Columbia might make. Columbia reserves the right to make additional arguments as appropriate, including in response to any positions taken by Plaintiffs in a responsive letter or otherwise. We thank the Court for its consideration of this matter.

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record